May it please the Court, Counsel. My name is Anthony Rothert. I represent the appellants in this matter. In this case, the plaintiffs challenge subsection 3.1 of a Missouri law enacted in 2012 called the House of Worship Protection Act. We argue that it violates the First Amendment and the Fourteenth Amendment, violates the First Amendment because it's content-based and also not narrowly tailored, and violates the Fourteenth Amendment by being impermissibly vague. I'll go wherever you want, of course, but I'm going to try to focus on the section being a content-based restriction. What about in Section 1 where it bans profane and rude and indecent behavior? Is that really a content-based restriction? I believe it is a content-based restriction, yes. In McCullen, most recently, but I don't think this aspect was new, the Court said that a speech restriction is content-based if it requires enforcement authorities to examine the content of the message that is conveyed to determine whether or not a violation has occurred. Under this statute, you can be intentionally and as reasonably disturbing as you want, and it doesn't violate the law, unless you're intentionally and unreasonably disturbing by using profane discourse or rude or indecent behavior or noise. We don't challenge the noise part, but as far as you'd have to examine the expressive activity to see if it's profane or that the activity is rude or indecent to determine whether or not there's a violation of the statute. So that is one of the ways in which the statute is content-based. I don't think that's the McCullen analysis, though. McCullen says if a violation has to be determined by its impact on the recipient, not just that it's profane, but that it's measured by the recipient and not the recipient. Yes, this is both. And of course, in McCullen, the majority did find the law there to be content-neutral. As to the effect... You think this is content-based even without its regard to its impact on the listeners? Well, it does also require an impact on the listeners, this statute. What else about it is content-based? Profane is not content-based. Well, we submit that profane is vague and content-based because you don't know whether or not it's profane without looking at the content of the speech. So you can be unreasonably disturbing of a house of worship and not profane. So prohibiting yelling fire in a crowded theater is content-based? If the law only prohibited... Well, if it was limited to when there are not fires and only prohibited fire but not other kinds of false alarms, I think it would be content-based. But we also have the second part here, which the Supreme Court of McCullen said to be clear the act would not be content-neutral if it was concerned with the undesirable effects that arise from the impact of speech on listeners. And this statute in the second piece of it requires that the expressive activity disturb the solemnity of a worship service. And that is an impact on listeners that was not present in McCullen but is present here and makes the law content-based in that way. The terms used are also vague. So vague as to fail to put reasonable people on notice as to whether their expressive activity is going to violate the statute. Profane, rude, and indecent are all words that have multiple meanings. And several of them have been addressed by the Supreme Court. Indecent was addressed in Reno v. ACLU as vague. Rude was discussed in Waters v. Churchill as vague. You have to deal with the mens rea defense to a vagueness argument. Let's not just throw out the easy part of the issue from your standpoint. Okay. Get to what makes it difficult. Well, I think the mens rea, it has to be intentionally... You have to be intentionally disturbing. And our client's speech is intentionally... It's disturbing. They acknowledge that it's disturbing. They don't want to be... The record shows that they don't want to be profane, rude, or indecent, but they do recognize that their speech is disturbing. How does the record show that? Well, because there are... Because the record in this case is summary judgment, and it's the affidavits from our They understand that their speech is disturbing, and they start off by saying, we're sorry to bother you. That they don't intend to be profane, rude, or indecent in their speech, but that they are not sure how to measure that. Well, then they'll be acquitted. Well, they may be, after they're arrested. The record also shows that because they don't understand... That would be true in any vague term. The person would ultimately be acquitted if they were correct, but... The defense would be what? We want it to be reasonably disruptive? I think disturbing is a better word, yes. I think that would be their defense. But because this is a First Amendment issue, and it's restricting speech, the harm is that the plaintiff's self-censored to steer wide. So you don't challenge the noise part of it? That is correct. So then, I guess the essence of your client's position is that we have the right, constitutional right, to be quietly disruptive? Well, if disruptive is the effect on a listener, yes. But how can you measure that? Well, that is exactly the vagueness problem, is I don't know how you measure disruptive. It would be up to a police officer and a judge, I suppose, after you're arrested, to determine whether or not there was a disruption to the solemnity of a worship service. Well, this isn't like a fuck the draft case. It isn't like that. However, I do think that if someone's leaflets did say fuck the draft, it would be profane and it could disturb the solemnity of a worship service. And therefore, it would be reasonable for someone to refrain from engaging in that expressive activity near a house of worship, so as to avoid being charged with a violation of this law. So, not only in McClellan, but in Snyder v. Phelps and Texas v. Johnson and the Cohen case that you're just speaking of, speech was regulated on the ground that the message would disturb listeners. And in each of those cases, it was found to be a content-based restriction on speech for that very reason, because of the effect it would have on listeners. And when that combines in Bose v. Berry, it was a violation to engage in speech that would affront the dignity of embassies. That was also found to be content-based, and that's very similar. I think dignity is a similar fluid concept as to the solemnity of worship services. I don't know that we have a full record on this, but presumably not everybody is offended by the kind of speech that's been made here. Correct. Some are offended, but not others. And that is true, which adds to the vagueness issue. How is one to know who will find the speech offensive? There's some examples of the speech that's given, and it's, I think, analogous to sidewalk counselors in McClellan. It suggests that there are religious authorities who are engaging in inappropriate sexual behavior, and says, if you know about this, you should talk about it, and you should call for transparency, and if you're a victim, you should tell. So I think that that's not what everyone wants on their way to mass, and it can be disturbing, but other people would not find it disturbing. And this statute, as it's written, requires the speaker to guess whether or not individuals will find it disturbing and unreasonably disturbing. So it doesn't have to just be disturbing. It has to be unreasonably disturbing. That's cited as a virtue of the statute by the appellees, but in fact, I think it makes it even more vague, because you can be as disturbing as you want to be, as long as you're not unreasonably disturbing through your profane, rude, or indecent speech. Again, you allege that they engage in these peaceful things, like leafletting, holding signs. Is there any real danger that they're subject to prosecution if they limit their activities to those things? I think there is a danger. First, there's evidence in the record that one of the people who sold the sign was told by church personnel that he had to get lost or he'd be in jail. So that's real. What does the record show that that individual was doing? That was David Byersmith. He was holding a church sign that said, And then Bishop Fenn, or Flynn, he was quoting a bishop who he disagreed with. And so he was holding a sign, and he had been a regular presence outside the church until this law was passed. So your argument is, this is not just a theoretical fear, it's actually occurred? Well, to him, it has actually occurred. And also, other plaintiffs have alleged that they've refrained from handing out leaflets, as they had in the past, because of the law. And there is another group that their testimony is that they're sometimes invited on church property. This law does not have an exception when it's the church itself that has invited the people to engage on speech. Is there any evidence that people entrance into church or exit from church is impeded by this? There is not. There is a separate subsection of the law that we're not challenging that prohibits interfering with the ingress and egress from the church. I'd like to reserve the remainder of my time for rebuttal. Very well. Thank you. Mr. Herth, good morning. You may proceed. Good morning, Your Honor. May it please the Court, Andrew Herth from the Missouri Attorney General's Office on behalf of the appellees. In Phelps-Roper v. City of Manchester, this court and bank held that the government may restrict disruptive and unwelcome speech to protect unwilling listeners when there are other important interests at stake. This case implicates two fundamental rights. But we didn't cite Boos. I'm sorry? Our in-bank opinion did not cite Boos, which was the basis for McCullen, leading me to think McCullen has drastically impacted our jurisprudence. For me, you need to address that. I will address that, Your Honor. Not now, you know, whenever you get there. Sure. This case implicates two fundamental rights, both the freedom of speech and the freedom of free exercise of religion. When two fundamental rights compete, again, this court has held that the courts must find an acceptable balance between the constitutionally protected rights of law-abiding speakers and unwilling listeners. The district court in this case ruled that Missouri's House of Worship Protection Act strikes that acceptable balance by prohibiting expressive conduct that intentionally and unreasonably disrupts religious service. As Mr. Rothridge said- What's the definition of religious worship service? It's defined in the statute, Your Honor. No, it's not. Well, House of Worship is- I didn't see it. It's not in 035. I'm sorry, Your Honor. I misspoke. Service is not defined, but House of Worship is defined. Yes, but what is the prohibition is to disturb the order and solemnity of the worship services. How many hours in the typical Sunday of a Baptist church is encompassed by that? Well, I don't know that we have that in your record. No, I know, but it bothers the heck out of me to figure that out. Is it all of the Sunday school classes? All of the two, three, four different religious hours that day? And then we get into the family stuff in the afternoon and evening in many churches. How much of that is covered by this crystal clear term, worship service? I believe the reference to solemnity of the worship service is a qualifier in the section of the statute that talks about how close the conduct has to be. It has to be so close as to disturb. But close to what? How about a Sunday school class? Is that a worship service? I think it would depend on the content of that Sunday school class. Teaching biblical history and theological concepts and principles? Yes, I would say it is. It doesn't show about who is doing this protesting, isn't it, at Catholic churches only? It is predominantly. The main plaintiffs in the case protest outside the Archdiocese of St. Louis, some in Kansas City as well. It is predominantly outside of Catholic churches. Is it any other kind of church? I didn't see that in the record. Not in the record, Your Honor. To answer your question, Judge Loken, the prescription applies to disrupting a house of worship that either occurs Let me find the exact language here. within the house of worship are so near it as to disturb the order and solemnity of the worship services. So services there qualifies the distance, the range, how far this extends. But I would agree with Your Honor that the statute is rather broad in terms of what constitutes a house of worship and what's going on in that house of worship. It strikes me as peculiar because we're talking about speech in a public forum, from a public forum. Yes, Your Honor. That impacts listeners to private speech. Yes, that is correct. I don't know that we've got any other cases that talk about that. We're not talking about this in McCollum where does the person walking the woman into the clinic get a free pass to proselytize when the protesters are banned from saying anything. We don't have that here. Apparently there's an ingress-egress separate provision that's probably not unlike the Phelps-Roper problem addressed in Phelps-Roper. That's correct, Your Honor. What do you do from outside the church that meets this, that violates this very vague prohibition? Well, we would contend that it's actually fairly difficult. One of the examples we gave in the district court was if, for example, you were to play Beethoven's Ninth Symphony at 150 decibels out on the street. There's noise. That would be noise. Apparently this chap with a sign was accused of violating this with a sign and never made it into the church service. The only impact presumably was that the people about to participate in the worship service saw it on the way in or the way out. I would agree that they did see it on the way in or the way out. And whatever worship service means, I don't think it can extend to people on the sidewalk outside the church. The issue is this must disrupt or disquiet the house of worship itself. They have to break in. They have to trespass. They have to either trespass physically or their communication has to be of such nature that people inside the worship service will be disrupted. But out of the noise, what is that? I suppose you could have bright lights of some sort, strobe lights or something of that nature. But not profanity unless it's noise. Unless it's loud. Yeah. Yeah, I would say. I mean, this strikes me as an ordinance I either don't understand or it's totally superfluous. Without conceding the latter, that it is superfluous. You know, I mean, trying to figure out what speech are we banning and why here? I think I can offer two explanations for that, Your Honor. One is that this exact language, the rude or indecent behavior, profane discourse and making noise, is language that has been on the statute books in Missouri and in other states for 150 years. That exact phrase has been used in many, many statutes across the country. And so I think when this law was reenacted, the legislature took language that had been in common use from earlier. But the operative words here are not profane or rude. The operative words are intentional and unreasonable. Well, if we interpret the statute to prohibit non-noisy expression that is rude, indecent or profane, that would be content-based, wouldn't it? If you interpret the statute to include... To prohibit. To prohibit non-noisy profane discourse, that was your question? Then that would be content-based. I don't agree with that, Your Honor. I don't believe that the statement profane is content-based. I think it has to do with the nature of the... We're talking about religious services. Profane is a word that, by definition, is related to religion. This is a word that describes a particular kind of behavior in the context of a religious service. So it's reaching conduct that is disruptive of that service. That's not true of rude. I agree profane can have some nuances in religion, but rude doesn't. Rude and indecent, no, it's not limited to religion. And rude is in the ears of the recipient. It is, Your Honor, but I would also say it's in the intention of the speaker. If the law here is intended to prohibit a speaker from intentionally being disruptive... The speaker has to be intentionally rude in the speaker's own mind, even though it's not rude to the viewer? Right, if the speaker is intending to be rude, that would qualify under the statute. What does the record show about how many churches in St. Louis, for example, are being... have these, we'll call them pickets for a minute. Is it mainly the cathedral or is it every Catholic church? It's mainly the cathedral. There are also some in Kansas City, I believe, that are one of the plaintiffs' protests outside Kansas City. Those are the only ones in the record. That would be a main church in Kansas City, too? Yes, it is Catholic in Kansas City. And how many of these people are typically there to protest? I don't think the record is entirely clear on that, but it seems that it's a fairly small number in the sense that it's not a hundred people. The named plaintiffs, I think there are about six or seven named plaintiffs. I don't remember the exact number off the top of my head, but there are groups also, and sometimes the groups have more people that would show up than at other times. Would the government's interest be satisfied by prohibiting only noisy, disruptive speech or conduct? If it were intentional and unreasonable noise, I think that would omit other forms of expression that were not based on volume. So the example I gave where if you had somehow a searchlight that you shined on the windows of the church during the church service, that wouldn't be noisy, but it would be rude. I think we would say that that's rude if you're doing it for the purpose of disrupting the service. It would certainly satisfy the intentional aspect. I mean, church searchlights don't turn themselves on by themselves or set themselves up. Once you get into the profane, though, is not the state venturing on and deciding what is theologically profane? I don't think that courts attempting to enforce or to rule on a matter when this is enforced would have to make any kind of searching into whether something was profane. Well, tell us what profane is then. Well, it would be an attempt by the speaker to disrupt the service with language of some sort that is spoken or written, and that is intentionally disruptive. I suppose if you did that within a Christian church, I would think that would be disruptive. If you did it outside the Christian church, it would normally be on a public sidewalk, for example. That would be a public forum, and you would be free to do that, except if your conduct reaches into that church. And so normally that would be by volume. That's the most likely way that conduct on the street would affect it. But this talks about so as to disturb the order and solemnity, so that can be the procession. I don't mean a formal religious procession almost. That would be included. Just the way that parishioners come in. It's the order of the services. Certainly. I would gloss that term as interference. I mean, if this, what we're talking about disturbing the order and solemnity of the service, we're really saying does this interfere. Are these protesters generally across the street? They aren't upright by the church, are they? I think they're in different places at different times. There's nothing in the record that they block egress or ingress. And they tend to approach people as they're going into church and on the way out. But whether they're on the sidewalk right next to the church or across the street, it's different. Do they approach them to try to engage in conversation? I'm sorry, Your Honor? Do they approach people to try to engage in conversation? Yes, that's my understanding. Okay. Is there sort of an interference with egress into the place of worship? There's no allegation that there is interference with ingress or egress. It's merely conversations or signs or pamphleting that happens outside on the street before people go in or after they come out. There's really nothing in the complaint that alleges anything that these plaintiffs do reaches inside the church. Okay. So we're just on the outside, then? Right. This is, in that sense, different from the... And there's nothing in the record to show people are prevented from getting into church or going to mass? Nothing in the record is showing that they are prevented from entering or exiting. No, Your Honor. And in that regard, this case is different than action began in, in which you actually had protesters barging into the cathedral and making noise inside. Clearly, that would be covered by this statute. But this statute reaches a little farther than that. On the point of narrow tailoring in Ulmer v. City of Lincoln, which has since been overruled by this court, the Nebraska legislature had passed a law similar to this, geared towards protecting the rights of citizens to engage in free exercise of religion. This court held that that was not narrowly tailored. But in his opinion, writing for the court, Judge Arnold suggested that the ordinance would have passed constitutional muster if it had been more narrowly tailored. And the language he used was, if, for example, anti-abortion protesters were to attempt to interrupt church services with their own speech, the city could adopt a more specific prohibition directed against disturbing or interrupting services of worship. That is all the Missouri legislature has done. This is what case, excuse me? That is the case of Ulmer v. City of Lincoln, which is cited in our brief. And as I said, it has been since overruled by Phelps Roper on other grounds. As to the vagueness argument, Your Honor, I see I'm out of time. You may finish your statement. Thank you. The state would contend that the vagueness is not an issue here because of the mens rea component. This is only, conduct only reaches, the statute only reaches conduct or speech that is intentionally disruptive. There is no danger that someone will accidentally violate the statute. If they violate the statute, it's because they meant to. And we'd ask that you affirm the district court's ruling. Thank you. If the content-based scrutiny of the standard applies, would you agree we'd have to reverse? If the court were to find that it was content-based, I think the law would be subject to strict scrutiny, a higher standard. We have not really briefed whether this is a compelling interest, although I think in the lower court Well, it's got to be least restrictive, it seems to me. That's what, given our dialogue this morning. I would agree with that, Your Honor. And I would say that the nature of the prescription in this case affects only what happens inside the church or only so near it as to affect or disrupt what's going on inside. I can't think of a way that would be less restrictive than affecting only the conduct that happens to affect what's inside. You could clearly draft this one more narrowly to get at what you agree was the core problem. I would concede it's not a model of clarity, Your Honor. Thanks. Mr. Rother, rebuttal. Thank you, Your Honor. I agree with Missouri that the purpose of this law is attempting to balance disturbances of house of worship and free speech. However, the balance comes out only one way. In the record, there is no evidence of any house of worship ever being disturbed ever, ever in Missouri. Any disturbance. But the record does show that free speech is being burdened by our clients who are refraining from engaging in leafleting and holding signs on public sidewalks because of this law. I think that the government needs to... You talk about disrupting a house of worship. Of course, the bricks and mortar of a church don't get disrupted. That's not the way the statute goes. You disrupt a house of worship by disturbing the worship services, the people. I think the statute... Be precise. Well, I think reading the law as it's written, it almost appears as you have to disturb the house of worship, and house of worship is defined as a building or a public or place. So that's an unusual phrasing, I think. And the other laws, laws in other states that have been upheld in the past,  We brought that up in our vagueness discussion. But is the record showing what the people actually are feeling? Because many Catholics are disturbed by the abuse that's been shown, and they probably are pleased to see these pickets and so forth. Well, what the record shows is that our clients understand that what they're saying is disturbing to some, some of the people that they're giving it to. And by disturbing those, they are actually disturbing the house of worship because these people will carry their emotions within the service. Well, yes. I never asked counsel to concede, but can you imagine a... And it would be so offensive to say to people in the Catholic congregation members that it would be disruptive of the service, because they would not be able to overcome their anger at the insult to the church or its leadership. I could conceive of a sign, and my position would be that if it's on a public sidewalk outside the church, that it cannot be restricted. And there would be a content-based restriction. And I think that is what this law is attempting to do. Does that sort of, in a way, coin versus California, which is a very offensive word at the time, but seems to venture into our daily vocabulary. Yes. So I think that is exactly what this law is trying to do, which is take protected speech that's offensive and that carries the offense into the worship service and make it illegal based on the response of the listener, which is content-based in our view. Is it so vague? Wouldn't a person of average or normal understanding know the difference between that which crosses the constitutional line and that which doesn't? Well, because it's based on the response of third parties, I might know what would disturb me, but I don't know what's going to disturb each individual in that church. And perhaps it kind of gets you to the lowest common denominator as far as fortitude for taking criticism. So if there are no further questions, we ask that you reverse the judgment of the district court. Thank you. We thank both sides for the argument. The case is submitted, and we will take it under consideration.